OPINION
{¶ 1} In these three consolidated appeals, J.F. ("appellant") appeals from judgments of the Franklin County Court of Common Pleas, Probate Division ("Probate Court"), adjudicating her to be a mentally ill person subject to hospitalization, and authorizing the administration of psychotropic medication to appellant. *Page 2 
 {¶ 2} The relevant facts are taken from the record. On October 30, 2006, appellant was 38 years old and lived in Columbus with her parents. On that date, appellant's father initiated the proceedings below by executing an affidavit in which he averred that appellant is mentally ill, represents a substantial risk of physical harm to others, and needs hospitalization and treatment for her mental illness. Specifically, he stated that appellant had threatened her neighbors; experienced delusions that people intended to harm or kill her; and believed that certain individuals and members of appellant's family were plotting against her, and were responsible for the terrorist attacks that took place on September 11, 2001. He stated that appellant had been a patient for five days in a facility for the mentally ill in 1986.
 {¶ 3} Based upon appellant's father's affidavit, the Probate Court determined that probable cause existed to believe that appellant is a mentally ill person subject to hospitalization. Accordingly, the court issued an order of detention, whereupon appellant was transported to Twin Valley Behavioral Health — Columbus Campus ("TVBH-CC") on October 31, 2006.
 {¶ 4} On November 3, 2006, a Probate Court magistrate held a full commitment hearing, at which appellant was present and represented by court-appointed counsel. The court heard testimony from appellant herself and from her court-appointed psychiatrist, J. Michael Oaks, D.O. Based upon the evidence adduced, the magistrate found appellant to be mentally ill and subject to hospitalization under R.C. 5122.01(B)(2) and (4). The magistrate ordered that she be committed to TVBH-CC for a period not to exceed 90 days. *Page 3 
 {¶ 5} On November 6, 2006, the Chief Clinical Officer of TVBH-CC and appellant's treating psychiatrist filed an application to authorize the forcible administration of psychotropic medications to appellant, alleging that while she needs such medications, she is mentally unable to knowingly and intelligently consent to their administration. They further alleged:
 [J.F.] has a substantial disorder of thought and perception that grossly impair[s] her judgment, behavior and capacity to recognize reality and meet ordinary demands of life. The patient has been refusing her medication. She has paranoid ideation and delusions with a history of impulsive actions and threats of violent behaviors. * * *
 The patient is not likely to improve without treatment. She is psychotic and delusional and has been since her early 20's most likely. With medication, she would be likely to show some improvement over a period of eight-twelve weeks. However, without the medications, she will likely remain ill. If she improves, she will most likely not remain so without continued medication.
 * * *
 There is currently no alternative treatment likely to be helpful to control the patient's symptoms. The proposed medication choices of the types noted are the standard and accepted treatment of this form of mental illness presentation. It is my professional opinion that the benefits from the medication outweigh the risks of possible side effects.
 {¶ 6} The court set the application for forced psychotropic medication for hearing on November 8, 2006. This hearing was later continued to November 15, 2006, because appellant's counsel requested an examination by an independent expert. The court appointed William Bates, M.D., as the independent expert. Dr. Bates examined appellant and filed a report wherein he stated that she is psychotic and in need of treatment, and she is unlikely to improve without the requested treatment. *Page 4 
 {¶ 7} On November 9, 2006, appellant objected to the magistrate's decision and requested an extension of time in which to file a memorandum in support thereof. The court granted an extension for the filing of the memorandum until seven days after the completion of the hearing transcript. Also on that date, the court granted appellant's motion to stay the November 15, 2006 forced medication hearing pending resolution of her objections to the magistrate's decision on the involuntary commitment.
 {¶ 8} On November 28, 2006, the court reporter filed in the Probate Court the transcript of the November 3, 2006 hearing. On November 30, 2006, appellant filed her memorandum in support of her objections to the magistrate's decision. Therein, she argued that the evidence was insufficient to make a clear and convincing showing that she was subject to hospitalization. She pointed out that Dr. Oaks' testimony that she posed a risk of harm to others was based solely on uncorroborated reports of verbal threats, and there was no evidence that appellant had ever acted on any threat. She directed the court's attention to the fact that she has a college degree; she appeared at the hearing well dressed, well nourished and with good personal hygiene; and spoke articulately.
 {¶ 9} She suggested that any problems that her father described are attributable to the friction attendant to a college-educated, unemployed child moving back in with her parents; however, she argued, without more, this is not enough to support an order for involuntary commitment. Appellant noted that she testified she had never harmed anyone else. She requested that the court reject the magistrate's decision, dismiss the affidavit, and expunge the record of this matter. *Page 5 
 {¶ 10} On December 4, 2006, the Franklin County Alcohol, Drug Addiction and Mental Health ("ADAMH") Board ("appellee") filed a memorandum contra to appellant's objections. On December 5, 2006, the Probate Court journalized an entry overruling appellant's objections, affirming the magistrate's decision, and finding that appellant is mentally ill and subject to hospitalization under R.C. 5122.01(B)(1), (2), (3), and (4). On December 6, 2006, the court scheduled appellant's forced medication hearing for December 8, 2006.
 {¶ 11} Also on December 6, 2006, appellant filed a notice of appeal from the trial court's judgment affirming the magistrate's decision. That appeal was assigned case No. 06AP-1225. Simultaneously with the filing of her notice of appeal, appellant moved this court for a stay of the forced medication hearing. On December 8, the Probate Court rescheduled the forced medication hearing for December 13, 2006, and reappointed Dr. Oaks to examine appellant and make a report for purposes of that hearing. Meanwhile, on December 7, 2006, appellee filed a motion to stay appellate proceedings in case No. 06AP-1225, and to remand the case to the Probate Court for the purpose of conducting the forced medication hearing.
 {¶ 12} On December 12, 2006, this court rendered a decision recognizing that the Probate Court's exercise of jurisdiction over the forced medication application would be inconsistent with this court's jurisdiction over the issue of the propriety of the commitment order and, as such, the trial court was divested of jurisdiction pending resolution of the commitment order appeal. See State ex rel. SpecialProsecutors v. Judges (1978), 55 Ohio St.2d 94, 97. However, we also found that "it does not serve the interests of judicial economy or the prompt resolution of this matter to force the probate court to await our *Page 6 
determination on the commitment appeal before proceeding on the forced medication application." Franklin County ADAMH Bd. v. J.F., 10th Dist. No. 06AP-1225, 2006-Ohio-6638, ¶ 4. Accordingly, we stayed the appeal of the commitment order and remanded the case to the Probate Court for the limited purpose of considering the forced medication application, and ordered that any order granting that application would be automatically stayed pending the outcome of appeal. We indicated our intention to consolidate any appeal from a forced medication order with the appeal of the commitment order, and to expedite briefing and final determination of both appeals.
 {¶ 13} On December 18, 2006, Dr. Oaks examined appellant and, on the date of the forced medication hearing, submitted his report. Therein, he stated that appellant is in need of forced psychotropic medication. The Probate Court held the forced medication hearing on December 19, 2006. Appellant chose not to attend. At that hearing, the court heard testimony from appellant's treating physician, Mary Meredith Dobyns, M.D., as well as that of Dr. Oaks.
 {¶ 14} On December 21, 2006, the Probate Court journalized an entry granting the application for forced medication. The court found that the testimony adduced constituted clear and convincing evidence that appellant does not have the capacity to give or withhold informed consent to the administration of psychotropic medications, it is in her best interest to take them, and the proposed treatment regimen is the least intrusive means necessary to treat appellant's condition. On that basis, the court granted the application for forced medication, and automatically stayed its decision pending the resolution of all appeals. On December 21, 2006, appellant appealed the forced *Page 7 
medication order. That appeal was assigned case No. 06AP-1276. The transcript of the December 19, 2006 hearing was filed in the Probate Court on January 5, 2007.
 {¶ 15} On January 12, 2007, TVBH-CC's clinical director filed with the Probate Court an "Application for Continued Commitment Review Motion for Court Approval of Medical Treatment Forced Medication." The director sought an order of continued commitment because the original 90-day commitment order was due to expire on February 2, 2007. The Probate Court scheduled a hearing on the motion for January 24, 2007. On January 23, 2007, appellant's counsel requested an independent expert examination. Also on that date, because of the independent examination request, the court rescheduled the continued commitment hearing from January 24, 2007, to January 26, 2007.
 {¶ 16} On January 25, 2007, the court journalized an entry canceling the January 26, 2007 hearing and vacating all entries dated January 12, 2007, or later, pending the outcome of the appellate proceedings in the two pending appeals.
 {¶ 17} On January 25, 2007, the record was filed in the Tenth District Court of Appeals, including, for the first time, the transcripts of the November 3, 2006 and December 19, 2006 forced medication hearings. Also on January 25, 2007, appellee moved this court for another remand to the Probate Court for the purpose of conducting the hearing on TVBH-CC's Application for Continued Commitment and Review Motion for Court Approval of Medical Treatment and Forced Medication. On January 30, 2007, this court granted that motion. On January 31, 2007, the Probate Court journalized an entry setting the continued commitment and review motion hearing for February 2, 2007. *Page 8 
 {¶ 18} Meanwhile, on January 22, 2007, Dr. Oaks examined appellant and on February 2, 2007, filed with the Probate Court his report, which stated that appellant is in need of forced medication to treat her paranoid schizophrenia. On February 2, 2007, following a hearing at which appellant was present and testified, the Probate Court journalized an entry in which it found that the request for continued commitment was supported by clear and convincing evidence, and ordered that appellant be committed for a period of up to two years. The court further granted the motion for continued treatment and forced medication, but stayed that order pending the outcome of all appeals.
 {¶ 19} Appellant filed a notice of appeal from that order, first in the Probate Court on February 2, 2007, and then in the Court of Appeals on February 23, 2007. That appeal was assigned case No. 07AP-97. The transcript of the February 2, 2007 hearing was filed in the Probate Court on February 22, 2007, and in the Court of Appeals on February 23, 2007. By agreement of the parties, this court consolidated all three appellate cases. On March 26, 2007, appellee moved this court to expedite oral argument and decision, which motion was granted on March 30, 2007. On May 10, 2007, following briefing by the parties, this court heard oral argument and the cases were submitted for decision.
 {¶ 20} On appeal, appellant advances a single assignment of error, as follows:
 THE TRIAL COURT'S DECISION TO COMMIT THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 21} We note that appellant has not set forth a separate assignment of error related to the Probate Court's forced medication orders. App.R. 16 expressly requires an appellant to separately set forth each assignment of error. State v. McCown, 10th Dist. *Page 9 
No. 06AP-153, 2006-Ohio-6040, ¶ 42. "Pursuant to App.R. 12(A)(1)(b), this court is required to determine the appeal based upon the assignments of error set forth in the briefs under App.R. 16, and we sustain or overrule only assignments of error and not mere arguments."Wells v. Michael, 10th Dist. No. 05AP-1353,2006-Ohio-5871, ¶ 18.
 {¶ 22} However, we also note that both parties briefed the issue of the propriety of the forced medication orders. Therefore, because we find that no material prejudice to appellee would result, and in the interest of the prompt and efficient administration of justice, we will consider and pass upon the propriety of the forced medication orders.
 {¶ 23} Appellant's challenges require that we review the commitment orders and the forced medication orders to determine whether each order is against the manifest weight of the evidence. In so doing, we remain mindful that judgments supported by some competent, credible evidence addressing all the essential elements of the case will not be reversed on appeal as against the manifest weight of the evidence. In reT.B., 10th Dist. No. 06AP-769, 2006-Ohio-4789, ¶ 7, citing CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 24} We begin with the involuntary commitment orders. In In reT.B., this court succinctly set forth the law applicable to an involuntary commitment in Ohio:
 "R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. When commitment is against a person's will, it is particularly important that the statutory scheme be followed so that the patient's due-process rights receive adequate protection." "[T]he individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill and who pose a continuing risk to society or to themselves". While confining mentally ill persons adjudged to be a risk to themselves or *Page 10 
society both protects society and provides treatment in the hope of alleviating the mental illness, the state nonetheless must meet a heavy burden to show that the individual in fact suffers from a mental illness and must be confined in order to treat the illness.
 "Under Ohio law there is a three-part test for an involuntary commitment. Each part of this test must be established by clear and convincing evidence. The first two parts of the test are found in R.C. 5122.01(A). First, there must be a substantial disorder of thought, mood, perception, orientation, or memory. Second, the substantial disorder of thought, mood, perception, orientation, or memory must grossly impair judgment, behavior, capacity to recognize reality, or the ability to meet the ordinary demands of life. The third part of the test requires that the mentally ill person be hospitalized for one of the reasons set forth in R.C. 5122.01(B)."
(Citations omitted.) Id. at ¶ 8-9.
 {¶ 25} Pursuant to R.C. 5122.01(B), a mentally ill person is subject to hospitalization by court order if, because of his or her mental illness, the person:
 (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
 (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 (4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested *Page 11 
by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.
In the instant case, the Probate Court determined that appellant was subject to involuntary commitment on all four of the preceding grounds.
 {¶ 26} Review of appellant's brief reveals that she attacks only the first two of the three parts of the test set forth in In re T.B.
Specifically, she argues that there is insufficient evidence to clearly and convincingly demonstrate that she is a mentally ill person, as that term is defined in R.C. 5122.01(A). The record demonstrates otherwise.
 {¶ 27} At the November 3, 2006 hearing, Dr. Oaks testified as follows:
 [Appellant] has a very elaborate and well-systematized paranoid delusional system in which she believes that others are going to kill her, want to use her for sex. She believes that people are living in the walls of [her] home and blowing drug smoke toward her to intoxicate her. She believes that neighbors and strangers are trying to influence her to kill herself. She believes that her neighbors are terrorists who are responsible for the 9/11 attacks. She believes that her neighbors are molesting children, and that both of her own parents want to use her for sex.
 * * *
 Even in the brief time I was with her, she incorporated me into her delusional system, believing that I know about all of these things and am actively participating in them.
(Nov. 6, 2006 Tr., 6-7.)
 {¶ 28} Dr. Oaks went on to testify:
 * * * [O]f most concern in the record was reports that she had made threats to kill her neighbors and family.
 * * * Because of the degree of her paranoia and the belief that she is to be killed or somehow forced to kill herself, I find that these reports of threats [are] credible, and in her mind, *Page 12 
this would be self-defense. But I do believe that she represents a danger to others.
 Her paranoia and reports of internal stimuli of consistent hallucinations are all consistent with a working diagnosis of paranoid schizophrenia. So I believe at this time she continues to require treatment where she is, which is a locked psychiatric unit.
 * * *
 Yes, she does have a substantial thought disorder.
(Id. at 7-8.)
 {¶ 29} Counsel then inquired further:
 Q. Okay. And at this point in time, is that substantial thought disorder, in your opinion, grossly affecting her judgment and/or her behavior?
 A. Yes, both of those.
 Q. Okay. And do you believe that [J.F.] represents a substantial risk of harm to others as a result of her mental illness?
 A. Yes, I do. She's one of the most ill people I've seen in quite some time. * * *
 * * *
 Q. Okay. So she does need the protective environment of an inpatient setting at this time.
 A. Yes.
 Q. What's your prognosis, then, Doctor?
 A. Well, it's very guarded at this time based on her refusal of medication.
(Id. at 8-10.) *Page 13 
 {¶ 30} At the February 2, 2007 hearing on the motion for continued commitment, the court again heard from Dr. Oaks, who had examined appellant on three occasions since her initial detention, and had reviewed her complete medical file. He again testified that appellant suffers from paranoid schizophrenia, and that she was admitted to TVBH-CC due to her paranoid delusions that individuals close to her were terrorists, were molesting children, and were trying to kill her. He reiterated that, due to her illness, she is unable to work or to live on her own. He further testified as follows:
 * * * [I]n the hospital her condition has continued to worsen. Her delusional system has broadened and now she perceives a worldwide conspiracy * * *[.]
 * * *
 She has expressed a belief that staff members in the hospital are running guns in the hospital. She has claimed that staff members used drugs in front of her. * * *
 * * *
 So because of her symptoms, including an expanding paranoid delusional system, auditory hallucinations at times, the rather bizarre nature of her delusions and the loosening of associations, these are all symptoms consistent with my diagnosis of paranoid schizophrenia.
 This is a substantial thought disorder which grossly impairs her judgment * * *.
 * * *
 I believe she represents substantial risk of harm to herself and to others. She's certainly unable to care for her most basic needs outside the hospital * * *.
(Feb. 2, 2007 Tr., 10, 12-13.) *Page 14 
 {¶ 31} Counsel then inquired, "[w]hat is the least restrictive environment in which your present treatment needs to be met?" Dr. Oaks replied, "[s]he continues to require treatment in her current setting, which is a locked psychiatric unit." (Id. at 13.) When asked about appellant's prognosis, Dr. Oaks went on to explain:
 Well, she has a very severe illness that would probably take many weeks to stabilize under the best of circumstances * * * But I believe that with an appropriate regimen of medications, in time, probably weeks or months, her condition will improve to the point where she can be transitioned to outpatient care.
(Id. at 14.)
 {¶ 32} Dr. Oaks' testimony constitutes clear and convincing evidence supporting the trial court's finding that appellant suffers from a substantial disorder of thought, mood, perception, orientation or memory, which grossly impairs her judgment, behavior, capacity to recognize reality, and her ability to meet the ordinary demands of life. Thus, the first and second prongs of the test have been satisfied.
 {¶ 33} The evidence is also clear and convincing and supports the trial court's finding as to the third prong — that appellant is subject to hospitalization for all four of the reasons enumerated in R.C.5122.01(B).
 {¶ 34} Appellant represents a substantial risk of physical harm to self as manifested by evidence of threats of suicide or serious self-inflicted bodily harm. R.C. 5122.01(B)(1). Dr. Oaks testified that appellant believed that others were conspiring to make her kill herself. Her father averred in his affidavit that appellant believes that strangers are telling her to kill herself.
 {¶ 35} Appellant represents a substantial risk of physical harm to others as manifested by evidence of recent threats that place another in reasonable fear of violent *Page 15 
behavior and serious physical harm. R.C. 5122.01(B)(2). Dr. Oaks testified, and appellant's father averred in his affidavit, that appellant had threatened to kill her parents and her neighbors.
 {¶ 36} Appellant represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that she is unable to provide for and is not providing for her basic physical needs because of her mental illness, and appropriate provision for those needs cannot be made immediately available in the community. R.C. 5122.01(B)(3). Dr. Oaks testified that appellant's mental illness renders her incapable of working or living on her own, and her delusions prevent her from living with her parents.
 {¶ 37} Finally, appellant would benefit from treatment in a hospital for her mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others and herself. R.C. 5122.01(B)(4). Dr. Oaks testified that a locked psychiatric unit is the least restrictive environment possible for appellant and that, even in that environment her prognosis was guarded, and that with medication it would probably take many weeks to stabilize her and months to improve her condition to the point where she could be released from the psychiatric unit.
 {¶ 38} The trial court's commitment orders are supported by clear and convincing evidence that appellant is a mentally ill person subject to hospitalization by court order.
 {¶ 39} The evidence also supports the trial court's forced medication orders. In the case of Steele v. Hamilton County Community Mental HealthBd. (2001), 90 Ohio St.3d 176, 736 N.E.2d 10, the Supreme Court of Ohio held that "[a] physician may order the *Page 16 
forced medication of an involuntarily committed mentally ill patient with antipsychotic drugs when the physician determines that (1) the patient presents an imminent danger of harm to himself/herself or others, (2) there are no less intrusive means of avoiding the threatened harm, and (3) the medication to be administered is medically appropriate for the patient." Id. at paragraph three of the syllabus.
 {¶ 40} The following evidence was adduced at appellant's December 19, 2006 forced medication hearing. Dr. Dobyns has been appellant's treating psychiatrist since appellant arrived at TVBH-CC. Dr. Dobyns is certified in forensic psychiatry and is board certified in psychiatry and neurology. Dr. Dobyns testified that appellant's delusions cause her to believe that the medications with which Dr. Dobyns seeks to treat her will sterilize and poison her. Though Dr. Dobyns has tried to explain to appellant the benefits of the treatment and the rationale for the belief that it will be beneficial for her, appellant is unable to process this information; instead, she incorporates it into her delusions.
 {¶ 41} Dr. Dobyns testified that the benefits of the proposed treatment regimen outweigh the risks associated therewith, and there is no less intrusive method of treatment for appellant than the use of antipsychotic medication. Dr. Dobyns told the court that the proposed treatment is in appellant's best interest because "it would help her to function in the world without her delusions. * * * [The medications] would help her make real life decisions, be able to pursue her life, she's very bright, and she has some goals that would be — she'd be able to accomplish." (Dec. 19, 2006 Tr., 16.) Without the authority to treat her as requested, the doctor stated, appellant's condition will persist indefinitely. With treatment, however, she could be released from the hospital within four to six weeks. *Page 17 
 {¶ 42} Dr. Oaks testified that appellant lacks the capacity to make an informed treatment decision because she is psychotic, her thinking is not logical, and she has no insight into her illness. She is in need of the proposed treatment regimen and would benefit from it. Having reviewed the specific features of the proposed treatment regimen, Dr. Oaks concurred with Dr. Dobyns that it is an appropriate and standard approach. Without that treatment, according to Dr. Oaks, appellant's illness would persist indefinitely, and she would be unable to function outside the hospital for the foreseeable future. Dr. Oaks concurred that the benefits of the proposed treatment outweigh the risks, and there is no less intrusive alternative treatment that may be effective.
 {¶ 43} The following evidence was adduced at appellant's February 2, 2007 hearing on the Review Motion for Court Approval of Medical Treatment and Forced Medication. Dr. Dobyns testified that she has explained to appellant that she needs to be treated with psychotropic drugs, and has also explained the benefits that the doctor expects to achieve through the proposed treatment program. According to the doctor, appellant is unable to understand what the doctor is talking about, sees things only through her own delusions, and lacks the capacity to make an informed decision about whether to give or withhold consent for medication. Without the authority to treat appellant on a consistent basis in accordance with the proposed treatment plan, appellant "would need to be hospitalized so that she would not injure herself or other people." (Feb. 2, 2007 Tr., 36.)
 {¶ 44} Without medication, Dr. Dobyns told the court, appellant continues to deteriorate. Dr. Dobyns stated that the benefits of the proposed treatment regimen outweigh the risks of harm associated therewith. The doctor further testified that there is *Page 18 
no less intrusive treatment regimen than the proposed administration of medication. Dr. Dobyns again told the court that it is in appellant's best interest to take the medication.
 {¶ 45} Dr. Oaks testified that, in his opinion, appellant lacks the capacity to make a decision regarding her treatment regimen because she is "floridly psychotic, she's utterly lacking insight into her illness, and her judgment is grossly impaired because it is determined or driven by delusional beliefs." (Id. at 44.) He stated that her capacity for decision-making in general has deteriorated since she was first admitted to TVBH-CC. He concurred with Dr. Dobyns' testimony that the proposed treatment regimen is medically necessary, that the benefits thereof outweigh the risks of side effects, and that there is no less intrusive means to treat appellant's mental illness. He added that appellant has received some of the medications listed in the proposal on an emergency basis, without any adverse effects. Dr. Oaks testified that the proposed medication program is essential to appellant's well-being.
 {¶ 46} The testimony of Drs. Dobyns and Oaks provides clear and convincing evidence as to all three requirements set forth in the syllabus of Steele. Accordingly, the forced medication orders are not against the manifest weight of the evidence.
 {¶ 47} Having determined that neither the involuntary commitment orders nor the forced medication orders are against the manifest weight of the evidence, we overrule appellant's assignment of error and affirm the judgments of the Franklin County Court of Common Pleas, Probate Division.
Judgments affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1